KAREN L. HANKS, ESQ.
Nevada Bar No. 9578
E-mail: karen@hankslg.com
CHANTEL M. SCHIMMING, ESQ.
Nevada Bar No. 8886
E-mail: chantel@hankslg.com
ANA P. MURGUIA, ESQ.
Nevada Bar No. 16284
E-mail: ana@hankslg.com
HANKS LAW GROUP
7625 Dean Martin Drive, Suite 110
Las Vegas, Nevada 89139
Telephone: (702) 758-8434
*Attorneys for SFR Investments Pool 1, LLC*

HANKS LAW GROUP

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| SFR INVESTMENTS POOL 1, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER; FEDERAL HOME LOAN MORTGAGE CORPORATION; DOES I through X; and ROE BUSINESS ENTITIES I through X, inclusive,<br><br>Defendants. | CASE NO.: 2:22-cv-02035-JCM-BNW<br><br>**EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

SFR INVESTMENTS POOL 1, LLC ("SFR") hereby moves for an emergency temporary restraining order and preliminary injunction ("Motion") against NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER ("Nationstar") and/or FEDERAL HOME LOAN MORTGAGE CORPORATION ("Freddie Mac") to enjoin Freddie Mac, and its successors, assigns and agents from continuing foreclosure proceedings on real property located at **7927 Capistrano Valley Avenue, Las Vegas, NV 89178; APN: 176-28-613-111** (the "Property").

SFR is the title owner of the Property and is facing a bank foreclosure sale based on a deed of trust that is terminated and discharged. **Unlike a number of these cases wherein a claim is made for termination of the Deed of Trust under NRS 106.240 but arguably due to a rescission or other action the loan did not remain accelerated for the requisite ten years, the**

**loan in the case was accelerated in 2010 and no rescission or other document was ever recorded to decelerate the loan. Ten years have passed since the loan was declared wholly due and therefore the Deed of Trust is terminated and the lien discharged.**

Further, SFR has been obstructed in its efforts to obtain information necessary to determine the economic viability of paying to discharge this debt—information Nationstar and/or Freddie Mac were required to provide pursuant to NRS 107.200 and 107.210. More specifically, all the way back on August 10, 2022, SFR requested, among other details required by the statute, the amount necessary to discharge the debt, the diem rate, and a breakdown of how the amount was calculated. SFR has received nothing in response to its statutory request for information. Consequently, SFR has been unable to obtain information necessary to consider paying off the loan to protect its interest. The property is set to be sold at auction on December 16, 2022, leaving SFR with no option but to file an emergency request for a temporary restraining order to stop the sale and obtain the necessary information. Without a temporary restraining order and/or preliminary injunction, SFR faces irreparable harm in the form of loss of the Property.

HANKS LAW GROUP

**DECLARATION IN SUPPORT OF EMERGENCY RELIEF**

I, Chantel M. Schimming, hereby declare as follows:

1. On or about August 9, 2022, SFR received a Notice of Breach and Default and of Election to Cause Sale of Real Property Under Deed of Trust that appeared to have been recorded against the Property on July 25, 2022.

2. Upon receipt, SFR, through its counsel, sent a request for information/statements pursuant to NRS 107.200 and NRS 107.210 to Nationstar, the then beneficiary of record and acting agent for Freddie Mac. SFR also requested a copy of the promissory note pursuant to NRS 107.260. *See* Ex. 6.

3. Nationstar received SFR's request on August 12, 2022, at 10:03a.m. *See* Ex. 7.

4. To date, SFR has not received a response to its request for information/statements, nor has SFR received a copy of the Promissory Note in response to its request.

5. On November 17, 2022, a Notice of Trustee's Sale ("Notice of Sale") was recorded against the Property, scheduling a foreclosure sale for **December 16, 2022, at 9:00 AM.**

6. On November 18, 2022, the beneficial interest under the Deed of Trust was assigned from Nationstar to Federal Home Loan Mortgage Corporation ("Freddie Mac").

7. SFR did not receive a copy of the Notice of Sale from Nationstar, Freddie Mac, or anyone acting on behalf of Nationstar and/or Freddie Mac.

8. On November 28, 2022, SFR did receive a copy of an old notice of trustee's sale indicating a sale date of August 7, 2013, on the Property. It appears that Nationstar, Freddie Mac, or someone action on behalf of Nationstar and/or Freddie Mac, sent a copy of the wrong notice of trustee's sale to SFR.

9. Upon receipt of the old notice of trustee's sale, SFR checked the Clark County Recorder's website and confirmed the Notice of Sale was recorded on November 17, 2022. However, SFR was unable at that time to see any information regarding the time and date of the scheduled sale.

10. My office then took the steps necessary to obtain a copy of the Notice of Sale and on November 30, 2022, I obtained a copy of the Notice of Sale indicating the sale was scheduled for December 16, 2022, at 9:00 AM.

11. Upon receipt of the sale information, I immediately began researching the history of this Property, particularly the recorded documents.

12. I confirmed that the loan appears to have been made wholly due/accelerated over ten years ago and never decelerated, thus implicating NRS 106.240.

13. I further confirmed that no response had been received from Nationstar and/or Freddie Mac with regard to SFR's statutory request for information pursuant to NRS 107.200 *et seq*.

14. I worked as quickly as possible to complete a review and analysis of the facts pertaining to this Property, the scheduled foreclosure sale and the lack of response to SFR's requests for information, ultimately determining that filing a lawsuit and moving to stop the

HANKS LAW GROUP

scheduled foreclosure sale was the most legally efficient way to stop a wrongful foreclosure and complicated future litigation.

15. I then immediately drafted and filed a Complaint and prepared the instant motion.

16. In an attempt to prompt a postponement or cancellation of the scheduled foreclosure sale, so as to avoid the need for an emergency temporary restraining order and to allow briefing on a motion for preliminary injunction in the normal course, I contacted the attorneys known in other similar matters to represented Freddie Mac (the record beneficiary) and Nationstar (the prior beneficiary and agent for Freddie Mac, as well as the current servicer according to the notice of default). Unfortunately, generally in these instances, SFR has been advised by that counsel that unless they have already been retained, no action will be taken, or counsel will simply forward the information to their client contact. In this case, we received exactly that response—counsel indicated he would send the information to the client to see if the client wants to take any action, but the client would likely just tell him not to do anything until retained.

17. Having heard nothing further from counsel by today, Thursday, December 8, 2022, and with the sale being only a week away and time of the essence, I could not wait any longer to file the instant motion.

18. Given the nearness of the foreclosure sale and the fact that immediate and irreparable injury will result to SFR before Nationstar and/or Freddie Mac can be heard in opposition, there is sufficient justification why further efforts to give written or oral notice should not be required.

19. Additionally, any further meet and confer would likely not be helpful here because such a meeting would not assist in resolution of the dispute without further court action. SFR and the opposing party take directly adverse positions on the application of NRS 106.240.

20. If SFR's Motion is not considered on an emergency basis, the upcoming sale will immediately and irreparably harm SFR by divesting it of the unique Property, clouding title to the

Property and increasing costs through the addition of a third-party purchaser before the matter could be heard in the regular course.

21. With the sale date being set for December 16, 2022 at 9 a.m., and the emergent nature of the instant motion being caused by Nationstar and Freddie Mac, rather than SFR, hearing this motion on an emergency basis is warranted

I make this declaration under penalty of perjury under the laws of the State of Nevada and the United States.

DATED this 8th day of December, 2022.

*/s/ Chantel M. Schimming*
CHANTEL M. SCHIMMING, ESQ.

## MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

### I. INTRODUCTION

SFR is the title owner to the Property. Freddie Mac is now foreclosing on the Property. However, Freddie Mac does not have authority to foreclose in this instance. Public records reflect the loan was made wholly due/accelerated over ten years ago, thus terminating the loan by operation of NRS 106.240. **Unlike a number of these cases wherein a claim is made for termination of the Deed of Trust pursuant to NRS 106.240, but there are questions as to whether the loan remained accelerated for the requisite ten years, the facts of this case are very clear.** The first notice of default regarding the loan secured by the Deed of Trust on this Property was recorded on October 1, 2010, indicating the loan was accelerated/declared immediately due and payable. Even allowing a 35-day grace period for confirmation that the deficiency was not cured, acceleration of the loan occurred no later than November 5, 2010. At no time during the subsequent ten years was any clear and unequivocal affirmative act necessary to decelerate the loan. No rescission has ever been recorded. Thus, at the latest, pursuant to NRS 106.240, the Deed of Trust was terminated/discharged as of November 5, 2020.

Further, Nationstar and Freddie Mac have failed to provide a statement regarding the loan or a statement regarding the amount necessary to discharge, despite the fact SFR requested this

information and NRS Chapter 107 mandates Nationstar and/or Freddie Mac were to respond within 21 days of the request. Nationstar and/or Freddie Mac have obstructed SFR from learning the amount necessary to discharge the debt so that SFR can potentially save its property from foreclosure while litigating the validity of the deed of trust and potential recovery of damages.

Until such time as a determination is made as to the validity of the deed of trust, a foreclosure sale should not be permitted to go forward. Further, no sale should occur until SFR is provided with a response to its NRS 107 request, allowing SFR the opportunity to protect its Property. SFR has paid on numerous properties after having received a statement pursuant to NRS 107.210, and should be afforded the same opportunity here, as Nevada law mandates.

In order to avoid irreparable injury, SFR files the instant motion for temporary restraining order and preliminary injunction on an emergency basis to stop the wrongful sale set to take place on **Friday, December 16, 2022, at 9:00 a.m.**

## II. SUMMARY OF RELEVANT FACTS

| DATE | FACTS |
|---|---|
| March 31, 2008 | A deed of trust which identified First Horizon Home Loans, a Division of First Tennessee Bank N.A. ("First Horizon") as the Lender and Mortgage Electronic Registration Systems, Inc. ("MERS"), solely as nominee for First Horizon and First Horizon's successors and assigns, as beneficiary, was executed by Borrower and recorded as Instrument No.: 200803310004177 ("Deed of Trust").[1] |
| October 1, 2010 | A Notice of Breach and Default and of Election to Cause Sale of Real Property Under Deed of Trust was recorded as Instrument No.: 201010010000342 ("First NOD").[2]<br><br>The First NOD indicates the Borrower became delinquent on March 1, 2009.[3] |

[1] *See* Deed of Trust, attached as **Exhibit 1.**

[2] *See* First NOD attached hereto as **Exhibit 2.**

[3] *Id.*

| | |
|---|---|
| | The First NOD further states the beneficiary "has declared and does hereby declare all sums secured thereby immediately due and payable… ."[4] |
| November 7, 2012 | A second Notice of Default and Election to Sell Under Deed of Trust was recorded in the Official Records of the Clark County Recorder as Instrument No.: 201211070002706 ("Second NOD").[5]<br><br>The Second NOD indicates the Borrower became delinquent on April 1, 2009.[6]<br><br>The Second NOD again states the beneficiary "has declared and does hereby declare all sums secured thereby immediately due and payable… ."[7] |
| April 18, 2013 | SFR obtained title to the Property on April 16, 2013, by successfully bidding on the Property at a publicly-held foreclosure auction in accordance with NRS 116.3116, *et. seq.*<br><br>The resulting foreclosure deed was recorded as Instrument No.: 201304180003307.[8] |
| July 25, 2022 | Notice of Breach and Default and of Election to Cause Sale of Real Property Under Deed of Trust was recorded against the Property in the Official Records of the Clark County Recorder as Instrument No.: 202207250001781 ("Third NOD").[9]<br><br>The NOD again indicates the Borrower became delinquent on April 1, 2009.[10]<br><br>The NOD again states the beneficiary "has declared and does hereby declare all sums secured thereby immediately due and payable… ."[11] |

[4] *Id.*

[5] *See* Second NOD attached hereto as **Exhibit 3.**

[6] *Id.*

[7] *Id.*

[8] *See* Foreclosure Deed, attached hereto as **Exhibit 4.**

[9] *See* Third NOD attached hereto as **Exhibit 5.**

[10] *Id.*

[11] *Id.*

| | |
|---|---|
| August 10, 2022 | SFR, through its counsel, sent a request for information/statements pursuant to NRS 107.200 and NRS 107.210 to Nationstar, as the then beneficiary of record and apparent agent for Freddie Mac.[12] |
| August 12, 2022 | Nationstar received SFR's 107 Request at 10:03 a.m.[13] |
| November 17, 2022 | A Notice of Trustee's Sale was recorded as Instrument No.: 202211170000818, scheduling a foreclosure sale for **December 16, 2022, at 9:00 AM.**[14] |
| November 18, 2022 | A document purporting to assign the Deed of Trust to Freddie Mac was recorded against the Property as Instrument No.: 202211180001413.[15] |
| December 8, 2022 | To date Nationstar/Freddie Mac has failed/and or refused to respond to SFR's 107 Request. Because the beneficiary has willfully failed to respond to SFR's 107 Request, SFR has been unable to obtain the full details regarding the debt secured by the deed of trust as set forth under NRS 107.200 and unable to determine the accurate amount necessary to discharge the debt secured by the Deed of Trust as set forth under NRS 107.210.<br><br>As a result of Nationstar and/or Freddie Mac's refusal to comply with Nevada law, SFR has been forced to litigate to obtain the statutorily required information. |

## III. LEGAL ARGUMENT

### A. Legal Standard

Rule 65 of the Federal Rules of Civil Procedure governs preliminary injunctions. A preliminary injunction may be issued if a moving party establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the moving parties' favor; and (4) that an injunction is in the public interest.[16] Here, SFR meets all four factors.

---

[12] *See* SFR's Request, attached hereto as **Exhibit 6**.

[13] *See* Postage Label and Delivery Confirmation, attached hereto as **Exhibit 7**.

[14] See Notice of Sale attached hereto as **Exhibit 8.**

[15] *See* Assignment, attached hereto as **Exhibit 9.**

[16] *See Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9 th Cir. 2014), as amended (Mar. 11, 2014 (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).



HANKS LAW GROUP

HANKS LAW GROUP

**B. SFR will Suffer Immediate, Irreparable Harm Without Injunctive Relief**

SFR is at risk of immediate and irreparable harm. Nevada law is clear that the loss of real property rights generally constitutes irreparable harm because "real property and its attributes are considered unique."[17] Where there is a strong probability of success on the merits, like here, the movant need only demonstrate that it will suffer a degree of hardship that outweighs the hardship of the defendant.[18] Nothing in Nevada law limits irreparable harm to the loss of real property to a principal residence. Further, SFR's ability to use the Property for its enjoyment or to otherwise use or sell the Property for profit will be immediate and irreparable. Any sale with further cloud title to the Property and will potentially add another third-party purchaser into the fray. In addition, SFR's business will be harmed.[19] Once the Property is sold, SFR will have lost the unique business asset—the Property itself. Because SFR will suffer immediate and substantial harm, as opposed to Nationstar and/or Freddie Mac who will merely be restrained from conducting a sale on a certain date, on a property in which it may not actually have a security interest, the Court should grant SFR injunctive relief.

**C. SFR Has a Likelihood of Success on the Merits,**

***1. The Deed of Trust terminated by operation of NRS 106.240.***

All sums secured by the Deed of Trust the subject of this litigation were accelerated no

---

[17] *See Dixon v. Thatcher*, 103 Nev. 414, 416, 742 P.2d 1029, 1030 (1987) (holding that real property and its attributes are considered unique and loss of real property rights generally results in irreparable harm)(citing *Leonard v. Stoebling*, 102 Nev. 543, 728 P.2d 1358 (1986) and *Nevada Escrow Service, Inc. v. Crockett*, 91 Nev. 201, 533 P.2d 471 (1975) (denial of injunction to stop foreclosure reversed because legal remedy inadequate).

[18] *See Topanga Press, Inc. v. City of Los Angeles*, 989 F.2d 1524, 1528 (9th Cir. 1993).

[19] The Nevada Supreme Court acknowledges this irreparable harm in *Sobol v. Capital Management Consultants*, 102 Nev. 444, 726 P.2d 335, 337 (1986).

> Without expressing an opinion on the merits of Sobol's complaint below, we conclude that Sobol has established a reasonable likelihood of prevailing on the merits. Furthermore, acts committed without just cause **which unreasonably interfere with a business or destroy its credit or profits, may do an irreparable injury and thus authorize and injunction.** *Guion v. Terra Marketing of Nev., Inc.*, 90 Nev. 237, 240, 523 P.2d 847, 848 (1974).

(Emphasis added).

later than November 5, 2010, making all sums under the Note wholly due and immediately payable. Specifically, a notice of breach and default and of election to cause sale of real property under deed of trust was recorded on October 1, 2010, which document stated that all sums secured by the Deed of Trust are immediately due and payable. Thus, by virtue of the language in the First NOD, the loan was accelerated at least by the October 1, 2010 date. Even taking into consideration language in NRS 107.080 that states acceleration cannot occur if the deficiency in performance is cured within 35-days after the recording of the NOD, this loan was accelerated no later than November 5, 2010. It is clear from the public record that the deficiency in performance was not cured within the 35-day window, thus making acceleration effective at the latest after that window expired in November 2010. Pursuant to NRS § 106.240,

> "The lien … created of any mortgage or deed of trust upon any real property, appearing of record, and not otherwise satisfied and discharged of record, shall at the expiration of 10 years after the debt secured by the mortgage or deed of trust according to the terms thereof or any recorded written extension thereof become wholly due, terminate, and it shall be conclusively presumed that the debt has been regularly satisfied and the lien discharged."

Given that the debt became wholly due over ten years ago, and was not otherwise satisfied or discharged of record, the deed of trust was terminated no later than November 5, 2010, and shall thus be conclusively presumed satisfied and discharged.

At bottom, the loan was declared wholly due/accelerated in November 2010, and no rescission or other document was recorded decelerating the loan within the ten years following acceleration. Thus, the Deed of Trust is terminated and the lien discharged. Even if the Court were to determine the Second NOD with a delinquency date a month later nullified the First NOD due to the change in delinquency date,[20] ten years has still passed since the recording of the Second NOD and thus the Deed of Trust is still terminated and the lien discharged.

Based on the information provided herein, SFR has met the standard for injunctive relief. SFR simply must show that there are serious questions going to the merits and if SFR's allegations

---

[20] Notably, it is SFR's position that the change in delinquency date does not actually indicate any payment or change in deficiency status of the borrower, but rather, is likely a result of a change in servicer or some other error resulting in a month difference in delinquency date.



HANKS LAW GROUP

are accepted, there is a potential for SFR's claim to be successful. The evidence here establishes that potential for success.

***2. Nationstar and/or Freddie Mac failed to comply with NRS 107.200 et seq.***

SFR will likely succeed on the merits in this litigation because SFR followed the proper procedure under NRS 107.200 *et. seq*. to request statements regarding the debt secured by the Deed of Trust and the amount necessary to discharge the debt, yet Nationstar and/or Freddie Mac willfully refused to provide the requested information as required by the statute. Without the requested information, SFR is unable to verify the debt and determine the feasibility of paying the amount necessary to avoid foreclosure on its Property. Failure by the beneficiary to provide this pertinent information will ultimately result in SFR's loss of the Property. Thus, SFR has been forced to file a lawsuit and incur fees and costs in seeking the information that should have been timely provided pursuant to statute.

It is undisputable that Nationstar failed to comply with NRS 107.200, 107.210 and NRS 107.260. That failed compliance provides justification to enjoin the sale. Right now, SFR has no idea what amount is required to discharge the debt. Moreover, SFR has incurred and continues to incur fees and costs and suffer other losses as a result of the Nationstar's failed compliance. The Nevada legislature provides homeowners like SFR with statutory protections that prevent a bank from taking a home without giving them a realistic chance of protecting themselves from foreclosure. NRS 107 provides ninety days between a notice of default before a notice of sale can be issued for the specific purpose of allowing the homeowner an opportunity to be heard if there is any reason why the sale should not proceed. NRS 107.200 to NRS 107.310 provide a mechanism to timely obtain critical information about the loan underlying the deed of trust, including, but not limited to, pay-off information and a copy of the promissory note.

Nationstar and/or Freddie Mac's utter failure to provide required information in response to SFR's written request has prevented from SFR determining the amount necessary to discharge the debt and evaluating possible payment of said amount, or other alternatives for protecting its Property. But, more importantly, it has forced SFR to file a lawsuit and to continually follow-up



HANKS LAW GROUP

HANKS LAW GROUP

to make sure the Property is not going to be sold while SFR still does not have the information. SFR should never have been put in the position where it had to litigate to get information under NRS 107.200 and NRS 107.210, or a copy of the Promissory Note. SFR attempted to learn the information it needed to protect its interest in the Property without having to seek injunctive relief from the court. Unfortunately, SFR is now left with no other option.

Chase's failure to comply with the statutory mandates is sufficient basis for injunctive relief. All told, SFR has a substantial likelihood of success on the merits

**D. The Balance of Equities Weigh In SFR's Favor**

The probable invalidity of the deed of trust fully tips the equities in favor of SFR. The fact that the loan on this Property has been in default since 2009, and the Bank had ample time throughout the last 13 plus years to foreclose, or at least to take an affirmative act to decelerate the loan, eliminates any argument Nationstar and/or Freddie Mac may make that a delay of a few more months tips the equities scale in favor of Freddie Mac. While SFR recognizes injunctive relief is extraordinary, it will have little or no impact on Freddie Mac here to postpone the foreclosure sale. Any delay during the pendency of this case will be minimal, involving a very small amount of discovery. On the other hand, allowing the sale to proceed could result SFR's property being taken away wrongfully. Simply put, a temporary restraining order will not harm Freddie Mac's interests whereas SFR's interests will be greatly harmed should a sale occur when the Deed of Trust has been terminated.

Additionally, SFR has diligently attempted to obtain the statement regarding the debt secured by the deed of trust pursuant to NRS 107.200 and the statement of the amount necessary to discharge the debt pursuant to NRS 107.210, as well as a copy of the Promissory Note pursuant to NRS 107.260. Nationstar and/or Freddie Mac willfully failed and/or refused to deliver the information as required by Nevada law. Without said information, SFR is unable to verify and potentially pay the amount necessary to avoid foreclosure on its Property. Again, any brief delay in the foreclosure sale will not prejudice Nationstar/Freddie Mac, while allowing the property to go to foreclosure without providing a legitimate opportunity to SFR to protect its Property will

severely prejudice SFR. Nationstar/Freddie Mac's failure to provide an NRS 107.200 and NRS 107.210 statement so that SFR could determine the amount necessary to discharge the debt and/or evaluate other options for protecting its Property, further tips the equities in favor of SFR.

**E. <u>An Injunction is in the Public Interest.</u>**

Any foreclosure sale under a terminated Deed of Trust would not be valid. Further, allowing a foreclosure sale without requiring Nationstar and/or Freddie Mac to provide SFR with statutorily required information to protect its interest would be contrary to legislative intent and would encourage continued violations of Nevada law. Thus an injunction is in the public interest. If the Property goes to foreclosure sale a third-party may unwittingly purchase the Property with a faulty belief that Freddie Mac is well within its rights to sell the Property, only to be mired in litigation. Further, in SFR's experience, when banks have pushed forward with a foreclosure sale inappropriately, resources and time the parties must spend in litigation are multiplied and the families that live in the properties are thrown into a state of worry and distress, if not outright eviction by the banks.

Public policy supports finality in non-judicial foreclosure sales. There is a strong possibility the Deed of Trust here has been terminated and there is no public policy that supports a bank non-judicially foreclosing without a valid security interest. Further, there is no public policy that supports a bank non-judicially foreclosing after it has thwarted a statutory mandate to provide payoff information so that an owner like SFR (who is not the original borrower) can discharge the debt and save the property from foreclosure. At a minimum, this Court must require Nationstar and/or Freddie Mac to comply with NRS 107.210, and take into consideration the fees, costs and other losses SFR incurred as a result of the failed compliance, so that SFR can determine whether it can pay to discharge the debt thereby avoiding the sale all together.

**F. <u>A *De Minimis* Bond is Sufficient.</u>**

The express purpose of posting a security bond is to protect a party from damages incurred as a result of a wrongful injunction, not from damages existing before the injunction was issued.[21]

---

[21] *See* FRCP 65; *Glens Falls Ins. v. First Nat'l Bank*, 83 Nev. 196, 427 P.2d 1 (1967).



HANKS LAW GROUP

Freddie Mac is only entitled to damages, if any, caused by the delay in the foreclosure of the Deed of Trust. The time it will take to resolve this litigation is unlikely to negatively impact the amount Freddie Mac could recover at a foreclosure sale. But given the likelihood of success on the merits, Freddie Mac will likely never reach foreclosure. Thus, SFR requests that it only be required to post a *de minimis* bond of $100.

## IV. CONCLUSON

SFR asks this Court to issue a temporary restraining order and schedule briefing and a hearing on a preliminary injunction to avoid irreparable damage. Above all, the fact is that real property is unique and it is not sufficient to say that SFR can simply obtain damages if it turns out the Deed of Trust has been terminated, or due to Nationstar and/or Freddie Mac's failed compliance with Nevada statutory law. SFR has met the standard for injunctive relief and issuance of a temporary restraining order in this instance is warranted.

DATED this 8th day of December, 2022.

**HANKS LAW GROUP**

*/s/ Chantel M. Schimming*
CHANTEL M. SCHIMMING, ESQ.
Nevada Bar No. 8886
7625 Dean Martin Drive, Suite 110
Las Vegas, Nevada 89139
*Attorneys for SFR Investments Pool 1, LLC*

HANKS LAW GROUP

HANKS LAW GROUP

**LIST OF EXHIBITS**

| EXHIBIT | DESCRIPTION |
|---|---|
| 1 | Deed of Trust |
| 2 | First NOD |
| 3 | Second NOD |
| 4 | Foreclosure Deed |
| 5 | Third NOD |
| 6 | SFR's Request |
| 7 | Postage Label and Delivery Confirmation |
| 8 | Notice of Trustee's Sale |
| 9 | Assignment |