1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| SFR INVESTMENTS POOL 1, LLC,<br><br>                                    Plaintiff,<br>        v.<br><br>NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER; FEDERAL HOME LOAN MORTGAGE CORPORATION; DOES I though X; and ROE BUSINESS ENTITIES I through X, inclusive,<br><br>                                    Defendants. | Case No. 2:22-cv-02035-ART-BNW<br><br>ORDER |

Before the Court is a dispute concerning the validity of various claims of title over a property in Las Vegas, Nevada. Now pending are three motions: Plaintiff's Emergency Motion for Temporary Restraining Order (ECF No. 5); Plaintiff's Emergency Motion for Preliminary Injunction (ECF No. 6); and Defendants' Motion to Dismiss Count One of the Complaint (ECF No. 20). For the reasons stated, the Court denies Plaintiff's Emergency Motions and grants Defendants' Motion to Dismiss.

I.    **FACTUAL AND PROCEDURAL HISTORY**

On March 31, 2008, non-party First Horizon Home Loans recorded a Deed of Trust against the property located at 7927 Capistrano Valley Avenue, Las Vegas, Nevada, 89178 with the Clark County Recorder. (ECF No. 6, Exhibit 1.) The Deed of Trust designates non-party Jannetje Tolchin as the "Borrower," First Horizon Home Loans as the "Lender," and Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary. (ECF No. 6, Exhibit 1.) The Deed of Trust references a promissory note signed by Tolchin requiring payment of $231,391.00 plus interest no later than April 1, 2038. (ECF No. 6, Exhibit 1.) It also includes language related to acceleration of the debt owed. In the event of

default, the Lender "shall" give notice to the Borrower prior to acceleration, and that if the default is not cured, "Lender at its option, and without further demand, may invoke the power of sale, including the right to accelerate full payment of the Note." (ECF No. 6, Exhibit 1.)

On October 1, 2010, a Notice of Breach and Default and of Election to Cause Sale of Real Property Under Deed of Trust was recorded against the property. (ECF No. 6, Exhibit 2 ("First NOD").) The First NOD indicates that Tolchin became delinquent on the loan on March 1, 2009. (ECF No. 6, Exhibit 2.) The First NOD stated the "present Beneficiary . . . has declared and does hereby declare all sums secured thereby immediately due and payable" and advised Tolchin that she "may have the right to cure the default." (ECF No. 6, Exhibit 2.)

A second Notice of Default was filed on November 7, 2012, by a servicer on behalf of Defendant, Nationstar Mortgage, LLC. (ECF No. 6, Exhibit 3 ("Second NOD").) The Second NOD indicates that Tolchin became delinquent on April 1, 2009. (ECF No. 6, Exhibit 3.) Like the First NOD, it includes language declaring all sums "immediately due and payable" and stating Tolchin may "cure [her] default." (ECF No. 6, Exhibit 3.)

Plaintiff SFR Investments Pool 1, LLC acquired title to the property on April 16, 2013, at a public foreclosure auction held by the Rio Vista HOA following the property owner's failure to pay HOA fees. (ECF No. 6, Exhibit 4 ("Foreclosure Deed").) The Foreclosure Deed was recorded on April 18, 2023. (ECF No. 6, Exhibit 4.) It indicates that Plaintiff purchased the property for $7,000. (ECF No. 6, Exhibit 4.)

Shortly after acquiring the property, Plaintiff filed a quiet-title action in state court attempting to extinguish Defendants' Deed of Trust and recorded a lis pendens against the property. (ECF No. 20, Exhibit B.) Plaintiff eventually lost in state court on summary judgment and then stipulated to dismiss the subsequent appeal. (ECF No. 20, Exhibits C, D.)

On July 25, 2022, a third Notice of Default was recorded against the property, substantively identical to the Second NOD. (ECF No. 6, Exhibit 5 ("Third NOD").)

In August of 2022, Plaintiff alleges that it sent a request for information pursuant to NRS 107.200 and NRS 107.210. (ECF No. 6, Exhibits 6, 7.) Defendants deny ever receiving the request. (ECF No. 20, Exhibit A.)

On November 17, 2022, a Notice of Trustee's Sale was recorded on the property scheduling a foreclosure sale for December 16, 2022. (ECF No. 6, Exhibit 8.) On November 18, 2022, Defendant Nationstar Mortgage recorded an Assignment of Deed of Trust on the property that transferred the property to Defendant Federal Home Loan Mortgage Corporation ("Freddie Mac"). (ECF No. 6, Exhibit 9.) Plaintiff commenced this action on December 8, 2022. (ECF No. 1.)

Plaintiff's complaint (ECF No. 1) alleges two causes of action. First, Plaintiff brings a quiet-title action based on NRS 106.240, Nevada's ancient lien statute, arguing Defendants' deed of trust on the property was extinguished by law. Second, Plaintiff brings a claim for damages based on alleged violations of NRS 107.200 *et seq.*, arguing Defendants willfully failed to make compulsory disclosures following Plaintiff's formal, written request.

Along with its complaint, Plaintiff also filed emergency motions for a temporary restraining order and a preliminary injunction, seeking to enjoin Defendants from moving forward with the foreclosure sale of the property. (ECF No. 5, 6.) The Court issued an Order (ECF No. 17), consistent with a stipulation filed by the parties (ECF No. 15), directing Defendants to take no steps toward the foreclosure of the property until the Court issues a decision on the pending motion for preliminary injunction. Defendants opposed the emergency motions for injunctive relief (ECF No. 20) and Plaintiff replied (ECF No. 22).

Defendants also filed its Motion to Dismiss Count One of the Complaint (ECF No. 20), arguing the claim fails as a matter of law because federal law bars

1   the relief Plaintiff seeks and because the facts Plaintiff alleged in its complaint
2   cannot trigger NRS 106.240. Plaintiff opposed the motion (ECF No. 23) and
3   Defendant replied (ECF No. 26).

4   **II.   DISCUSSION**

5            Factually, this case is typical of many actions for quiet title concerning
6   homes in Nevada bought and sold at foreclosure auctions during the fallout of
7   the 2008 financial crisis. Plaintiff purchased the property at issue here in a HOA
8   foreclosure sale for $7,000. In state court, the parties litigated the validity of
9   Defendants' Deed of Trust following Plaintiff's purchase, and Defendants
10  prevailed on summary judgment. Shortly before Defendants' foreclosure sale of
11  the property to collect on a delinquent loan, Plaintiff filed an action in this Court
12  arguing Defendants' interest in the property was extinguished by operation of
13  NRS 106.240.

14           NRS 106.240, Nevada's ancient lien statute, "provides that certain liens on
15  real property are automatically cleared from the public records after a specified
16  period of time." *LV Debt Collect, LLC v. Bank of New York Mellon as Tr. for*
17  *Certificateholders of CWMBS, Inc., CHL Mortg. Pass-Through Tr. 2005-02, Mortg.*
18  *Pass-Through Certificates, Series 2005-02*, 139 Nev. Adv. Op. 25 (2023). The
19  statute discharges liens tied to a mortgage or deed of trust "10 years after the
20  debt secured by the mortgage or deed of trust according to the terms thereof or
21  any recorded written extension thereof become wholly due." NRS 106.240.

22           Plaintiff contends that when Defendants recorded the First NOD, the
23  Second NOD, at some point before recording both, or when the thirty-five-day
24  period to cure a default under NRS 107.080 ended after recording both,
25  Defendants accelerated the loan, making it wholly due under NRS 106.240.
26  Because ten years have passed since any of these possible dates of acceleration,
27  Plaintiff argues that Defendants' interest in the property was discharged. As such,
28  Plaintiff requests an injunction preventing Defendants from foreclosing on the

property, a declaratory judgment establishing Plaintiff's unencumbered title to the property, and damages for Defendants' alleged violations of NRS 107.200 *et seq.* But, as shown below, federal law, specifically 12 U.S.C. § 4617(f), bars the Court from granting injunctive relief in this case, and Plaintiff's quiet-title action fails as a matter of law in light of the Nevada Supreme Court's recent decision interpreting NRS 106.240. *LV Debt Collect, LLC*, 139 Nev. Adv. Op. at 1.

### A.   EMERGENCY MOTIONS FOR INJUNCTIVE RELIEF

First, the Court addresses Plaintiff's Emergency Motions for injunctive relief. Restraining orders and preliminary injunctions are "extraordinary remed[ies] never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). The legal standard for obtaining a temporary restraining order and the legal standard for obtaining a preliminary injunction are "substantially identical." *See Stuhlbarg Intern. Sales Co. v. John D. Bush and Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001), overruled on other grounds by *Winter*, 555 U.S. at 20. The Supreme Court clarified the standard for these forms of equitable relief in *Winter*, instructing that the plaintiff "must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction [or restraining order] is in the public interest." 555 U.S. at 20. The Ninth Circuit also recognizes an additional standard: "if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied.'" *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).

Beyond the *Winter* factors, there is a fundamental jurisdictional question because Defendants' interest in the property is owned by Freddie Mac, which

neither party contests. (ECF No. 6, Exhibit 9.) "Congress created . . . Freddie Mac (the Federal Home Loan Mortgage Corporation) to foster the secondary market for home mortgages." *City of Spokane v. Fed. Nat. Mortg. Ass'n*, 775 F.3d 1113, 114 (9th Cir. 2014). As a response to the 2008 housing crisis, "Congress passed the Housing and Economic Recovery Act of 2008 ('HERA'), which . . . established the Federal Housing Finance Agency ('FHFA'), an independent agency charged with supervising [Freddie Mac]." *Cnty. of Sonoma v. Fed. Hous. Fin. Agency*, 710 F.3d 987, 989 (9th Cir. 2013). HERA also granted the FHFA the power to place Freddie Mac into conservatorship, which the FHFA did on September 6, 2008. *Id.*; *see also* 12 U.S.C. § 4617(a)(2).

As conservator, the FHFA has separate statutory powers. For example, HERA authorizes the FHFA to take action "necessary to put the regulated entity in a sound and solvent condition" and actions as may be appropriate to "preserve and conserve the assets and property of the regulated entity." 12 U.S.C. § 4617(b)(2)(D). Further, FHFA succeeds to "all . . . titles . . . of the regulated entity." 12 U.S.C. § 4617(b)(2)(A).

HERA also "substantially limits judicial review of FHFA's actions as conservator." *Cnty. of Sonoma*, 710 F.3d at 990; *see also Saxton v. Fed. Hous. Fin. Agency*, 901 F.3d 954, 957 (8th Cir. 2018) (calling Section 4617(f) an "anti-injunction provision"); *Robinson v. Fed. Hous. Fin. Agency*, 876 F.3d 220, 227 (6th Cir. 2017) (referring to the statute's "anti-injunction language"); *Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 613–14 (D.C. Cir. 2017) (finding HERA limits judicial remedies, including "injunctive, declaratory, and other equitable relief"); *Jacobs v. Fed. Hous. Fin. Agency*, 908 F.3d 884, 894 (3d Cir. 2018) (concluding that Section 4617(f) limits not only equitable relief, but also some monetary claims). "Except as provided in this section or at the request of the Director, no court may take any action to restrain or affect the exercise of powers or functions of the Agency as a conservator." 12 U.S.C. § 4617(f). Thus, if the action Plaintiff seeks

to enjoin here "is a lawful exercise of FHFA's power as conservator of [Freddie Mac], the courts have no jurisdiction over [Plaintiff's] claims, and this [motion must be denied]." *Cnty. of Sonoma*, 710 F.3d at 990 (vacating a district court's order granting a preliminary injunction of an FHFA directive). On the other hand, section 4617(f) is "inapplicable when FHFA acts beyond the scope of its conservator power." *Id.* At 992. The question before the Court, then, is whether foreclosing on a loan when the borrower is delinquent falls within FHFA's conservator powers.

The Court finds that foreclosure falls within FHFA's conservator powers. HERA "grants the FHFA expansive authority in its role as a conservator. . . . [T]he [FHFA] is authorized to take control of a regulated entity's assets and operations, conduct business on its behalf, and transfer or sell any of its assets or liabilities." *Collins v. Yellen*, 141 S. Ct. 1761, 1776 (2021) (citing U.S.C. §§ 4617(b)(2)(B)–(C), (G)). "When the FHFA exercises these powers, its actions must be 'necessary to put the regulated entity in a sound and solvent condition' and must be 'appropriate to carry on the business of the regulated entity and preserve and conserve [its] assets and property.'" *Id.* (quoting U.S.C. § 4617(b)(2)(D)).

Here, Freddie Mac's loan has been in default since 2009. As conservator, the FHFA assumes Freddie Mac's assets and liabilities, including the loan at issue here. 12 U.S.C. § 4617(b)(2)(A). HERA grants the FHFA, through Freddie Mac, the power to transfer or sell any of its assets or liabilities. U.S.C. § 4617(b)(2)(G). So long as the action taken puts Freddie Mac "in a sound and solvent condition" and helps to "preserve and conserve" Freddie Mac's assets and property, the action is within the FHFA's statutory powers as conservator. U.S.C. § 4617(b)(2)(D). Foreclosure on the property to collect on obligations due to Freddie Mac is a valid exercise of the FHFA's powers as conservator under HERA to preserve and conserve Freddie Mac's asset. Thus, this Court has no jurisdiction to enjoin the foreclosure.

1          Courts across the country have reached a similar conclusion when
2    analyzing a functionally identical limitation on injunctive relief affecting actions
3    taken by the Federal Deposit Insurance Corporation ("FDIC"). *See Cnty. of*
4    *Sonoma*, 710 F.3d at 992 (analogizing 12 U.S.C. § 4617(f) to the statutory bar on
5    judicial review of the Federal Deposit Insurance Corporation's actions taken as a
6    conservator or receiver). The relevant FDIC statute provides "no court may take
7    any action . . . to restrain or affect the exercise of powers or functions of the
8    [FDIC] as a conservator or a receiver." 12 U.S.C. § 1821(j). Applying this provision,
9    the First, Fourth, and D.C. Circuits have all concluded that courts may not enjoin
10   the FDIC from foreclosing on a security it holds. *See Telematics Int'l, Inc. v. NEMLC*
11   *Leasing Corp.*, 967 F.2d 703, 705 (1st Cir. 1992) (describing 12 U.S.C. § 1821(j)
12   as an "anti-injunction provision"); *Tillman v. Resol. Tr. Corp.*, 37 F.3d 1032, 1036
13   (4th Cir. 1994) (also describing 12 U.S.C. § 1821(j) as an "anti-injunction
14   provision"); *Freeman v. F.D.I.C.*, 56 F.3d 1394, 1399 (D.C. Cir. 1995) (holding that
15   12 U.S.C. § 1821(j) bars injunctive relief halting a foreclosure).

16          Plaintiff fails to persuasively argue that the statutory bar on injunctive
17   relief in 12 U.S.C. § 4617(f) should not apply here. First, Plaintiff argues that
18   Section 4617(f) should not apply because the FHFA is acting "*ultra vires* or in
19   some third capacity." (ECF No. 22 at 4 (quoting *Roberts v. Fed. Hous. Fin. Agency*,
20   889 F.3d 397, 402 (7th Cir. 2018)).) But as demonstrated above, the FHFA is not
21   acting *ultra vires* but pursuant to its specific statutory authority as conservator
22   to preserve and conserve Freddie Mac's assets and property. And Plaintiff
23   misrepresents the meaning of the term "third capacity" in *Roberts*. Rather than
24   acting through a third-party, as Plaintiff argues, the *Roberts* court instead means
25   acting as neither a conservator nor a receiver, but rather in some "third capacity."
26   *Roberts*, 889 F.3d at 402. Here, the FHFA's actions, while through third parties,
27   are within its powers or functions as a conservator and are thus protected by
28   Section 4617(f).

Second, Plaintiff contends that HERA does not authorize FHFA to displace or violate state property law, and that because its complaint alleges that state law extinguished Freddie Mac's interest in the property, Section 4617(f) cannot protect the FHFA's actions here. But both cases Plaintiff relies on for this argument cut against its contentions. In *Waterview Mgmt. Co. v. F.D.I.C.*, the court held that Section 1821(j) barred equitable relief, although the regulated entity may still be required to pay damages from outstanding claims. 105 F.3d 696, 700 n.2 (D.C. Cir. 1997). And in *Jordan v. Nationstar Mortg., LLC*, the court did not even consider Section 4617(f)'s jurisdictional bar on equitable relief, but rather determined that HERA did not preempt state foreclosure law in a class action for damages based on Fannie Mae's alleged violations of a state statute prohibiting pre-foreclosure residential entry. 240 F. Supp. 3d 1114, 1128 (E.D. Wash. 2017).

Because the FHFA is acting within its statutory powers as a conservator, this Court lacks jurisdiction to enjoin Freddie Mac's foreclosure sale of the property. 12 U.S.C. § 4617(f); *Cnty. of Sonoma*, 710 F.3d at 994–95. In the absence of jurisdiction to grant injunctive relief, the Court need not analyze Plaintiff's Emergency Motions under the *Winter* factors. Accordingly, Plaintiff's Emergency Motions for Temporary Restraining Order and Preliminary Injunction are denied.

## B.    MOTION TO DISMISS COUNT ONE OF THE COMPLAINT

Fed. R. Civ. P. 12(b)(6) allows for challenges based on a failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But even a facially plausible claim may be dismissed under Fed. R. Civ. P. 12(b)(6) for "lack of a cognizable legal theory." *Solida v. McKelvey*, 820 F.3d 1090, 1096 (9th Cir. 2016). Thus, to survive a motion to dismiss a claim must be

both facially plausible and legally cognizable.

Plaintiff's NRS 106.240 claim cannot survive Defendants' Motion to Dismiss under the Supreme Court of Nevada's recent decision interpreting NRS 106.240, *LV Debt Collect, LLC*. When the parties briefed this issue, the relationship between a recorded Notice of Default and NRS 106.240's ten-year clock on lien termination was a contested issue. The Nevada Supreme Court's decision holding that a loan secured by real property does not become "wholly due" for purposes of NRS 106.240 when a Notice of Default is recorded makes Plaintiff's claim fail as a matter of law. *LV Debt Collect, LLC*, 139 Nev. Adv. Op. at 1.

*LV Debt Collect, LLC* is factually similar to this case. The appellant in that case, like Plaintiff here, acquired title through a HOA foreclosure sale and originally litigated its quiet-title action on non-NRS 106.240 grounds. *Id.* Once ten years passed after the appellee first recorded a Notice of Default in 2008, the appellant amended its complaint to assert a declaratory relief claim based on NRS 106.240 *Id.* The appellant argued that language in the recorded Notice of Default rendered the debt secured by the appellee's deed of trust wholly due for purposes of NRS 106.240, such that by 2018, the appellee's deed of trust was extinguished as a matter of law. *Id.*

The Nevada Supreme Court disagreed for three reasons, two of which are relevant here. First, the court found that "a Notice of Default is not identified in NRS 106.240 as a document that can render a secured loan 'wholly due' for purposes of triggering the statute's 10-year time frame." *Id.* at 5. Second, "acceleration can only occur if its exercise is clear and unequivocal, and the Notice of Default's purported acceleration language was not sufficiently clear and unequivocal here." *Id.*

The court observed that NRS 106.240 states that a debt becomes wholly due only according to two things: "(1) the 'terms thereof,' referring to the mortgage

or deed of trust, or (2) 'any recorded written extension thereof.'" *Id.* at 3. "Thus, when there is no recorded extension of the due date, the terms of the mortgage or deed of trust dictate when the debt becomes wholly due." *Id.*

The deed of trust at issue in *LV Debt Collect, LLC* contained a "discretionary acceleration clause," where the appellee had the option to accelerate full payment of the note only after providing notice and the borrower's failure to cure. *Id.* Thus, while the "Notice of Default satisfied the notice-and-cure preconditions . . . [it] could not itself accelerate the loan under the terms of the acceleration clause." *Id.*

The Deed of Trust at issue in this case contains identical language in its discretionary acceleration clause. Thus, by extension, none of the three Notices of Default in this case could have accelerated the loan and made it "wholly due" for the purposes of NRS 106.240's ten-year clock. Plaintiff's alternative argument, that Defendants declared the loan wholly due before recording the First NOD, is implausible on its face. *See Daisy Tr. v. Fed. Nat'l Mortg. Ass'n*, No. 21-15595, 2022 WL 874634 (9th Cir. Mar. 24, 2022) (stating "an unrecorded acceleration notice . . . is legally irrelevant" when determining whether a loan is wholly due under NRS 106.240). Even assuming this contention is true, the terms of the Deed of Trust do not allow acceleration until after the lender has provided the borrower with notice and an opportunity to cure.

Plaintiff's claim fails for another, distinct reason: namely, even if recording a Notice of Default could render a loan wholly due, none of the Notices of Default in this case were sufficient to do so. In Nevada, "acceleration of a debt must 'be exercised in a manner so clear and unequivocal that it leaves no doubt as to the lender's intention.'" *Id.* at 5 (quoting *Clayton v. Gardner,* 813 P.2d 997, 999 (1991). In *LV Debt Collect, LLC*, the court found that although the Notice of Default stated that appellee "does hereby declare all sums secured [by the deed of trust] immediately due and payable," it also provided that the borrower could cure the

default. *LV Debt Collect, LLC*, 139 Nev. Adv. Op. at 5. The conflicting language made the Notice of Default not so clear and unequivocal, leaving doubt as to the lender's intention to accelerate the loan. *Id.* For that additional reason, the court found that the Notice of Default could not trigger NRS 106.240's ten-year clock. *Id.*

The Notices of Default in this case contain the same conflicting language. Each of the three Notices states that the lender "has declared and does hereby declare all sums secured [by the deed of trust] immediately due and payable." (First NOD at 2; Second NOD at 4; Third NOD at 2.) Each of the three also states that the lender may cure the default. (First NOD at 2; Second NOD at 3; Third NOD at 3.) Thus, none of the Notices of Default were clear and unequivocal enough to accelerate the loan and trigger NRS 106.240's ten-year clock. *LV Debt Collect, LLC*, 139 Nev. Adv. Op. at 5.

Additionally, Plaintiff alleges no facts supporting a "clear and unequivocal" acceleration of the loan after the thirty-five-day cure periods expired. Plaintiff only states that either the loan was accelerated when the Notices of Default were recorded, or it was accelerated after the cure periods expired. Acceleration after the cure periods expired relies on the conflicting language in the Notices of Default, language that cannot accelerate a loan as a matter of law. Absent an allegation of some other, independent action by Defendants accelerating the loan in a clear and unequivocal way, Plaintiff's claim is implausible on its face.

Plaintiff has not stated a plausible claim for relief under NRS 106.240. The Court will therefore grant Defendants' Motion to Dismiss Count One of the Complaint.

### III.    CONCLUSION

The Court denies Plaintiff's Emergency Motion for Temporary Restraining Order (ECF No. 5) and Plaintiff's Emergency Motion for Preliminary Injunction (ECF No. 6).

1    The Court grants Defendants' Motion to Dismiss Count One of the
2    Complaint (ECF No. 20) and grants Plaintiff leave to amend its complaint to allege
3    a plausible claim for relief under NRS 106.240.

4

5    DATED THIS 27th day of September 2023.

6

7    _____
8    ANNE R. TRAUM
     UNITED STATES DISTRICT JUDGE